# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DUSTIN W. PERRY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-17-1441 |
| WEXFORD HEALTH SOURCES, INC., ELAINE COTTON, *Nurse*, and DR. MOHAMMAD SALEEM, M.D.,[1] | * * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Self-represented Plaintiff Dustin W. Perry, an inmate incarcerated at the Calvert County Detention Center in Barstow, Maryland, brings this civil action pursuant to 42 U.S.C. § 1983 against Defendants Wexford Health Sources, Inc. ("Wexford"), Nurse Elaine Cotton, and Mohammad Saleem, M.D. ECF No. 1. Perry avers that while he was housed at the Patuxent Institution ("Patuxent"), Defendants denied him medical care and failed to provide timely treatment for his toe. ECF Nos. 1, 3. He seeks $150,000 in damages. ECF No. 17.

On March 30, 2018, Wexford moved to dismiss the Complaint or alternatively for summary judgment (ECF No. 21), to which Perry responded. ECF No. 25. On August 6, 2018, Dr. Saleem moved for summary judgment (ECF No. 35), also to which Perry responded. ECF No. 37. After review of the record, exhibits, and applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). Defendants' motions shall be granted.

**I. Background**

Perry alleges in his Complaint that nurse Cotton[2] denied him medical care "from the end

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants Wexford Health Sources, Inc. and Mohammad Saleem, M.D.

of Sept. 2016 to the second week of Nov. 2016." ECF No. 1 at 2; ECF No. 3-2 at 2-3.[3] According to Perry, his left toe "was an open wound, constantly bleeding" and swollen. *Id.* He further states that Dr. Saleem, a surgeon, treated the "Double Ingrown Nail" on his toe in January 2017. *Id.*; ECF No. 16.

On April 6, 2018, Perry amended his Complaint to state, as best as can be ascertained, that surgery on his toe was originally scheduled for June 29, 2016 and July 11, 2016, but did not take place until five months later, on November 29, 2016. ECF No. 24 at 2. Perry asserts that his untreated toe wound caused "everlasting effect" and damage to his balance, nerves, and the appearance of his left toe. *Id.*

According to Perry's medical records, on March 18, 2016, Perry saw medical staff regarding his toe. ECF No. 35-3 at 2. At that time, Perry requested a nail clipper from Priscilla Momoh, PA-C, to clip his ingrown left toenail; however, the nail clipper was not available, and Perry was rescheduled to return. *Id.* On March 31, 2016, Perry requested pain medication, stating that he re-injured his left toe after his cellmate accidentally stepped on it. *Id.* at 4. Ayo Jimoh, a registered nurse, assessed the toe and noted that it was bleeding profusely with a deep

---

[2] Perry first named nurse Cotton in the Complaint as "Elaine Cotton". *See* ECF Nos. 1, 7. In its motion, Wexford indicated that it was unable to identify any employee by that name. ECF No. 21 at 1 n.1. Perry responded, first the time, that the named Defendant is "Celia Cotton, RN." ECF No. 25 at 1. Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave [to amend] when justice so requires." Fed R. Civ. P. 15(a)(2). However, "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party[.]" *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*)). A proposed amendment is unduly prejudicial if it is belated and would change the nature of the litigation. *Id.* at 604. To the extent that Perry is attempting to amend his Complaint to change the name of a Defendant almost one year after the initial filing, his proposed amendment shall be denied and the claims against Elaine Cotton will be dismissed without prejudice. Should Perry wish to pursue his claims against Celia Cotton, RN, he must do so in a separate lawsuit.

[3] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

cut. *Id.* Jimoh cleaned and treated the area, and instructed Perry to have the ingrown toenail cut. *Id.*

On April 4, 2016, Perry saw Emmanuel Esianor, a physician's assistant, during a sick call visit. *Id.* at 5. Perry complained to Esianor that his left toe, which he described as "open and painful," had been infected for four months. *Id.* Esianor ordered topical wound care twice a week for one month. *Id.* at 6.

On June 22, 2016, Perry saw Jimoh, at which time Perry requested removal of his ingrown toenail. *Id.* at 8. Jimoh did not note of Perry any apparent acute discomfort. *Id.* On June 28, 2016, Perry returned for a sick call visit with Oladipo Olaleye, a nurse practitioner, complaining of the left ingrown toenail. *Id.* at 9. Olaleye noted that Perry's toenail was tender and "clear drains at times." *Id.* Olaleye referred Perry for consultation with a surgeon regarding ingrown toenail removal. *Id.* at 10.

On June 29, 2016, Perry saw Dr. Saleem for evaluation. *Id.* at 12. Dr. Saleem noted that Perry had "tender skin on left big toe and has ingrowing toe nail[,] no pus or exudate." *Id.* Dr. Saleem recommended surgery to treat the toe, and Perry was scheduled for surgery shortly thereafter.

On August 30, 2016, Perry saw Olaleye during a sick call visit. *Id.* at 13. Noting that surgery had previously been scheduled by Dr. Saleem, Olaleye sent an email to remind the scheduler to set up the appointment for toenail removal. *Id.*

On October 11, 2016, Perry was transferred from Patuxent to Maryland Correctional Institution-Hagerstown ("MCI-H"), where he continued to be seen by medical staff for his left toe. *See* ECF 21-4 at 4-17. On October 20, 2016, a consultation for surgical removal of Perry's left ingrown toenail was submitted. *Id.* at 10.

On November 29, 2016, Perry was seen at the MCI-H surgical clinic by Dr. Saleem, at which time his left ingrown toenail was successfully removed. *Id.* at 18. Perry was prescribed pain medication and antibiotics and was directed to return for a follow-up in one month. *Id.*

Perry returned to the clinic for wound care on December 6, 2016 and December 9, 2016. *Id.* at 21-25. On December 13, 2016, Perry indicated during a scheduled provider visit that he no longer wanted to have wound checks on his toe, stating that "it's fine." *Id.* at 26. On December 18, 2016, nurse Christina Bird updated Perry's medical chart to indicate that the toe wound had healed and Perry has "no exudate present, no pain, and no signs or symptoms of infection." *Id.* at 28. As a result, Bird noted that "[n]o further treatment is required." *Id.* Perry understood that he should "complete and turn in a sick call if signs or symptoms of infection arise or if problem reoccurs." *Id.*

## II.     Standard of Review

Defendants have moved to dismiss the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment. Motions styled in this manner implicate the Court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F.Supp.2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* §

1366, at 159 (3d ed. 2004, 2012 Supp.)). Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

**III. Analysis**

Lawrence's claims, brought pursuant to 42 U.S.C. § 1983, all sound in deprivation of his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution. With regard to Wexford, the Court initially notes that the doctrine of respondeat superior does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Putting to one side whether Wexford is a state actor for § 1983 purposes, even if it were, it cannot be liable solely on the theory respondeat superior. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009). Rather, Perry must plausibly aver that Wexford deprived him of some federal constitutional or statutory right by virtue of implementing an unconstitutional policy, practice or custom. *See Monell v. N.Y. City Dep't of*

5

*Soc. Servs.*, 436 U.S. 658, 690 (1978). The allegations here fall far short of this requirement. Accordingly, the claims against Wexford must be dismissed. *See Love-Lane*, 355 F.3d at 782.

The Eighth Amendment claims as to the remaining individual Defendants, viewing the facts most favorably to Lawrence, also fail. To sustain an Eighth Amendment claim based on denial of medical care, a plaintiff must demonstrate that Defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition qualifies as "serious" if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm

ultimately was not averted." *See Farmer*, 511 U.S. at 844. "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted).

Under this standard, an Eighth Amendment violation cannot be supported from a mere disagreement between an inmate and a physician over the appropriate level of care, absent exceptional circumstances. *Id.* Further, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977).

Perry's claim centers on the delay of his surgery, which he attributes to Dr. Saleem. Perry further contends that this delay caused permanent damage to his toe. ECF Nos. 1, 3, 24. Although Perry's surgery did not take place until November, 29, 2016, five months after his initial consultation with Dr. Saleem, the Court cannot find that delay exposed Perry to a serious or significant injury. "[D]elay in providing treatment does not violate the Eighth Amendment where the seriousness of the injury is not apparent." *Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980). Indeed, the record, viewed most favorably to Perry, does not demonstrate that he suffered permanent damage to his toe as a result of any delay. Rather, according to his medical chart, Perry indicated that his toe was "fine" two weeks following removal of the ingrown toenail. Additionally, nursing notes reflect that less than three weeks after the surgery, Perry's toe wound had healed and necessitated no further treatment.

Moreover, subjectively, the delay did not amount to an act or omission "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Perry has marshalled no evidence that Defendants exhibited a callous disregard for a serious medical need. *See Estelle*, 429 U.S. at 105-06. During Dr. Saleem's first meeting with Perry on June 29, 2016, Dr. Saleem recommended surgery and scheduled it for the following week. ECF No. 35-4 at 5. However, Dr. Saleem did not see Perry again until the day of surgery. *Id.* at 7. Dr. Saleem states that he was unaware of the reason for the delay, as he "does not schedule the inmate's availability for appointments." *Id.* at 6. Nonetheless, Perry was routinely seen and treated by other providers, both at Patuxent and MCI-H, between his initial visit with Dr. Saleem and his surgery on November 29, 2016. On these facts, viewed most favorably to Perry, he cannot demonstrate that any delay was the product of Defendants' callous disregard for a serious medical need. Summary Judgment is granted in Defendants' favor.

## IV. Conclusion

Defendants Cotton and Wexford shall be dismissed from suit. Summary judgment will be granted in favor of Defendant Dr. Saleem. A separate Order follows.

|  |  |
| --- | --- |
|     12/26/18 |     /S/ |
| Date | Paula Xinis |
|  | United States District Judge |